# AMERICAN FORK CITY v. CHARLIER

No. 2445.   Decided April 29, 1913.   On application for Rehearing,
July 10, 1913 (134 Pac. 739).

1. INTOXICATING LIQUORS—ORDINANCES—VALIDITY.   Under Laws
1911, c. 106, section 68, providing that nothing in the act shall
prohibit any city council from enacting regulations of the
liquor traffic in addition to, but not in conflict with, the pro-
visions of the act, and Comp. Laws 1907, section 206, as amended
by Laws 1911, chap. 120, empowering city councils to license
and regulate, or to prohibit the sale of intoxicating liquor, and
to pass ordinances necessary to carry into effect the powers
conferred, a city may pass an ordinance prohibiting the sale
of liquor within the city, and punishing acts prohibited and
punished by state law, and may impose the same penalties as
are imposed by state laws, if within the jurisdiction of the
municipal court.[1]   (Page 234.)

2. CONSTITUTIONAL LAW—EQUAL PROTECTION OF THE LAWS—ORDI-
NANCES—VALIDITY.   An ordinance of a city which makes it un-
lawful for any person, directly or indirectly, to sell intoxicat-
ing liquor, or keep the same for sale, and which declares that
any person violating the same shall be guilty of a misdemeanor,
and shall be punished by fine or imprisonment, or both, is not
invalid as discriminatory because containing no provision pun-
ishing corporations violating the law, for all the acts prohibited
by the ordinance are punishable in the same manner and to
the same extent.   (Page 237.)

-3. CORPORATIONS—ORGANIZATION—RETAIL LIQUOR TRAFFIC.   A cor-
poration cannot be legally organized to sell liquor at retail,
but may be organized to manufacture or sell liquor at whole-
sale, and a sale of liquor by a corporation other than at whole-
sale is *ultra vires*.   (Page 237.)

4. CORPORATIONS—CRIMINAL OFFENSES—PUNISHMENT.   A corpora-
tion is a mere artificial legal entity which may neither be
arrested nor imprisoned, though it may be indicted or informed
against, and by special process brought into court, and tried
and convicted of certain offenses, and be fined in a specific
sum of money, and the fine collected on execution, provided
there is any corporate property.   (Page 237.)

---

[1] Salt Lake City v. Howe, 37 Utah, 170, 106 Pac. 705, Ann. Cas.
1912C, 189.

5. CRIMINAL LAW—AGENTS—CRIMINAL RESPONSIBILITY. The agents of a corporation who violate state laws or municipal ordinances may be arrested and punished like other individual offenders, and for *ultra vires* acts the agents responsible for them are usually the only ones who may be punished, and for acts not *ultra vires* the agents may be punished, though the corporation may also be punished as a joint offender. (Page 237.)

6. INTOXICATING LIQUORS—ORDINANCES—VALIDITY—OMISSION OF WORDS. The word "natural" in an ordinance, making it unlawful for any person to sell intoxicating liquor in a city, and punishing any "natural" person violating the ordinance, is without effect; and the omission thereof does not affect the validity of the ordinance as authorizing the punishment of persons violating it. (Page 241.)

7. INTOXICATING LIQUORS—ORDINANCES—PUNISHMENT—VALIDITY. A city may fix a minimum fine for the violation of ordinances, so long as the fine imposed is within the limits fixed by the charter or special statute, and is not unreasonable or excessive, and the minimum fine of fifty dollars, imposed by an ordinance punishing the illegal sale of liquor, is not unreasonable or excessive. (Page 241.)

8. CRIMINAL LAW—JUDICIAL NOTICE—FACTS OF COMMON KNOWLEDGE. The courts will take judicial notice of the fact that an election was held in June, 1911, under the mandatory provisions of the local option act as amended. (Page 242.)

ON APPLICATION FOR REHEARING.

9. CRIMINAL LAW—APPEAL—PRESUMPTIONS—VALIDITY OF ORDINANCES. The court, on appeal from a conviction for a violation of an ordinance of a city punishing the illegal sale of intoxicating liquor, must presume that a local option election was held under the mandatory provisions of the statute, and that the ordinance was passed pursuant to law or the power vested in the authorities of the city until the contrary is shown, and, where accused offers no evidence, the presumption prevails against him, and the conviction will be affirmed, with costs, in favor of the city for printing brief on appeal. (Page 249.)

10. MUNICIPAL CORPORATIONS—QUESTIONS IN LOWER COURT—VALIDITY OF ORDINANCE. Where a city is given general power to pass an ordinance on a given subject, the presumption is that an ordinance passed on that subject is valid, and the burden of showing its ivalidity is on the one assailing it. (Page 250.)

11. CRIMINAL LAW—ORDINANCES—VALIDITY—BURDEN OF PROOF. One charged with violating an ordinance of a city punishing the illegal sale of liquor, who desires to assail the power of the city to pass it by reason of the result of a local option election,

should do so in the local court or in the district court on appeal, where the case is tried de novo; and he cannot raise the question for the first time in the Supreme Court on appeal, unless, perhaps, where it appears on the face of the ordinance that the city exceeded its power. (Page 251.)

STRAUP, J., dissenting in part.

APPEAL from District Court, Fourth District: *Hon. J. E. Booth,* Judge

Geo. D. Charlier was convicted of violating an ordinance of American Fork City. He appeals.

AFFIRMED.

*E. A. Walton* and *M. E. Wilson* for appellant.

*Geo. P. Parker* for respondent.

FRICK, J.

Appellant was convicted by a jury of having unlawfully sold intoxicating liquor within the corporate limits of American Fork City, contrary to the provisions of a certain ordinance alleged to be in force in said city. The ordinance in question reads as follows:

"It shall be unlawful for any person, directly or indirectly, or upon any pretense or by any device, to manufacture, sell, exchange, barter, dispense, serve, give away, or keep for sale any intoxicating liquors, or to solicit, take or accept any order for the purchase, sale, shipment, service or delivery of any such liquor, or to aid in the delivery or distribution of any intoxicating liquors so ordered or shipped, or to own, keep, or in any way be concerned, engaged or employed in the owning or keeping of any intoxicating liquors with intent to violate any of the provisions of this ordinance, or to authorize or permit the same to be done within the corporate limits of American Fork City, Utah County, Utah.

"Sec. 10. Any natural person who shall violate any of the provisions of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than fifty dollars or more than two hundred and ninety-nine dollars, or by imprisonment in the city jail of American Fork City for not less than thirty days or more than six months, or by both such fine and imprisonment. If any natural person shall be convicted the second time for violating any of the provisions of this ordinance, such persons shall be fined for such second and each subsequent violation by both such fine and imprisonment."

The validity of the foregoing ordinance is assailed upon various grounds, which we shall consider in the order in which they are argued in appellant's brief.

The first objection, stating it in the language of counsel, is: "There is no competent evidence of the ordinance or of its publication." This objection is, in our opinion, clearly untenable. The ordinance was produced in court, and it was proved that it had been duly passed, and it was also proved that publication thereof had been made as required by Comp. Laws 1907, section 205, as amended by Laws 1911, p. 228. The proof was clearly sufficient. McQuillin, Mun. Ords. section 387. In holding the proof of the ordinance sufficient in this case, we do not wish to be understood as intimating that it is necessary to prove municipal ordinances in the so-called police courts or in those courts that are clothed with original jurisdiction under our statutes to enforce municipal ordinances.

The next ground of invalidity is stated thus: "The ordinance is invalid as being repugnant to, and in conflict with, section 65 of chapter 106, Laws of Utah 1911." Counsel, as one of the reasons why the ordinance should be held invalid, say that it is so because "the statute and ordinance make criminal precisely the same acts." Assuming this to be true, yet why should this invalidate the ordinance? Whether such would be the effect does not depend upon the reason just stated by counsel, but rather depends upon whether, in the absence of some constitutional

inhibition, American Fork City was authorized by the Legislature of this state to pass such an ordinance. Section 68 of chapter 106, Laws of Utah 1911, at least permits, if it does not directly authorize, the cities of this state to pass ordinances upon the subject covered by the one in question here. That section provides:

"Nothing in this act contained shall prevent or prohibit any city council, board of trustees or board of county commissioners from enacting restrictions upon and regulations of the traffic in intoxicating liquors in addition to but not in conflict with the provisions of this act."

Moreover, at the same session of the legislature at which said chapter 106 was passed, and with the terms and provisions thereof in mind, the legislature also amended subdivision 41 of section 206, Comp. Laws 1907, in which section the charter powers of cities are enumerated.

In the amendment aforesaid the legislature expressly authorized the councils of the various cities of this state to regulate or prohibit the sale or disposition of intoxicating liquors. The section as amended, so far as material here, reads as follows: "To license and regulate or prohibit the manufacturing, selling, giving away, or disposition in any manner of any intoxicating liquor." (Laws 1911, ch. 120.)

In another subdivision of the same section (section 206 x 87) the city councils are expressly empowered "to pass all ordinances . . . necessary for carrying into effect . . . all powers and duties conferred by this title." It is further provided that the city councils are empowered "to enforce obedience to such ordinances" by the imposition of fines and imprisonment. Such fines must, however, be "in any sum less than $300, or by imprisonment not to exceed six months, or by both such fine and imprisonment." We have already held, on a former occasion, that

"the legislature could confer police powers upon the municipality over subjects within the provisions of existing state laws, and authorize it, by ordinance, to prohibit and punish acts which are also prohibited and punishable as misdemeanors under the general statutes of the state."

(*Salt Lake City v. Howe,* 37 Utah, 170, 106 Pac. 705, Ann. Cas. 1912C, 189.)

In view of the several provisions of the statutes we have quoted above, can any reasonable doubt exist in the mind of any one that the legislature intended to and did confer ample power upon the municipalities of this state to pass ordinances prohibiting and punishing the sale or other disposition in any manner within the corporate jurisdiction of intoxicating liquors, and that this may be done although the statutes of the state likewise prohibit and punish such sales and dispositions? The overwhelming weight of authority in this country is to the effect that, where such power is conferred upon municipalities, they may prohibit and punish the same acts that are prohibited and punished by the state laws, and may impose the same penalties imposed by the state laws, if within the jurisdiction of the municipal courts. 2 McQuillin, Mun. Corps. sections 877, 878; 28 Cyc. 696; Black on Int. Liqs. section 225; 1 W. & T. Law of Int. Liqs. section 280. See, also, *Ex parte Simmons,* 4 Okl. Cr. 662, 112 Pac. 951; same case on rehearing, 5 Okl. Cr. 399, 115 Pac. 380, where the authorities upon the subject are reviewed in an exhaustive opinion. To the same effect is *Oklahoma City v. Spence* (Okl. Cr.) 126 Pac. 701.

It is not necessary for us to cite the numerous cases from the different states upon this question, since they are collated in footnotes to the different sections referred to in the several text-books to which reference has been made. The California cases cited by counsel can be given no weight under the statutes of this state. The Supreme Court of California, in obedience to certain constitutional and statutory provisions in force in that state, has continuously held that the cities of that state have not the power to prohibit and punish any acts which are prohibited and punished by the general laws of the state. Nor are the other cases cited by counsel in point here. There is, however, one case from Iowa namely, *Iowa City v. McInnerny,* 114 Iowa, 586, 87 N. W. 499, which is sometimes cited as holding contrary to the views we have herein expressed. By referring to that

case it will be noticed that the decision is based upon a somewhat peculiar statute. In view of that fact, the decision cannot be regarded as of controlling influence under a statute like ours. We are clearly of the opinion that there is nothing in the ordinance in question which is in conflict with chapter 106 aforesaid, and further that under the statutes of this state American Fork City, the respondent here, had ample power to pass and enforce the ordinance in question, unless the same is invalid for some other reason.

Counsel, however, further insists that "the alleged ordinance is invalid for want of power in the city council, for unreasonableness, and in being discriminatory." We have already disposed of the question of power. Nor can we see in what respect the ordinance is so un- 2, 3, 4, 5 reasonable as to authorize, much less require, a court to declare it invalid on that ground. We think the ordinance, if otherwise valid, is clearly not invalid for the reason that it is unreasonable. The contention that the ordinance in question is discriminatory at first blush seems to present a question somewhat difficult, if not serious. This contention arises out of the following circumstances: The ordinance makes it "unlawful for any person, directly or indirectly," to do the acts prohibited therein. The last section, however, limits the punishment to a "natural person." It is contended that this invalidates the ordinance because it does not operate equally upon all those who may violate its provisions. As we remarked above, at first blush that contention seems reasonable, but when the ordinance is considered in the light of our statute, the general law upon the subject, and when the jurisdiction of the municipal courts of this state is kept in mind, the contention is far more plausible than sound. In section 65 of chapter 106, the penalties for violating any of the provisions of said act are specifically stated. It is there provided that, if a natural person shall violate any of the provisions of the act, he shall be punished by a fine of not less than fifty dollars nor more than $299, or by imprisonment of not less than thirty days nor more than six months, or by both such fine and imprisonment;

and in case of a second offense the punishment must be by both fine and imprisonment, and the same for each subsequent offense. It is further provided that, if any of the provisions of the act shall be violated by a corporation, it shall be punished by a fine of not less than $100 nor more than $1000 for the first offense, and in case of a second offense the fine shall be not less than $300 nor more than $5000, and a like fine for each subsequent offense. It will be seen, therefore, that the penalty which may be imposed upon natural persons is within, while that which may be imposed upon corporations is clearly beyond, the penalties that municipalities are authorized to impose for the violation of their ordinances. It is further made apparrent that the penalties that may be imposed upon corporations are beyond the jurisdiction of the municipal and justice courts of this state. It was for this reason, no doubt, that the penalty clause in the ordinance in question was made to read as it does.

In this connection it may not be improper to state that under the laws of this state a corporation cannot legally be organized for the purpose of selling or disposing of intoxicating liquors at retail, but may be for the purpose of manufacturing it or selling it at wholesale. The sale or any other disposition of intoxicating liquors, other than in wholesale quantities, by a corporation would, therefore, be *ultra vires* in the strictest sense of that term. But appellant contends that a corporation cannot be punished under the ordinance in question for doing acts for the doing of which he may be punished, and hence he contends that the ordinance is discriminatory, and for that reason void. It seems to us, however, that this contention is not sound. A corporation is a mere artificial legal entity, which may neither be arrested nor imprisoned, and can act only through its agents. True, it may be indicted or informed against, and in such event may, by special process, be brought into court, and may be tried and convicted of certain offenses, and be fined in a specific sum of money, and the fine may be collected upon execution if there is any corporate property or assets. This is as far as the state can enforce its criminal

laws against the artificial legal entity called a corporation. But since a corporation can and does act only through some authorized agent or agents, such agents, in case they violate the laws of the state or the ordinances of a municipality, may be arrested and punished the same as any other individual offender may be arrested, tried, and punished. Again, for *ultra vires* acts the agents responsible for them are usually the only ones who are made to suffer punishment, and for acts not *ultra vires,* if prohibited and illegal, they ordinarily may be punished, although the corporation may also be punished as a joint offender. In volume 2 of the Laws of Intoxicating Liquors by Woollen & Thornton, section 692, the authors lay down the rule governing that subject in the following language:

"If a corporation illegally make a sale, or illegally keep liquors, its officers who participate in such illegal act become liable, and it is no protection that the illegal act was the act of the corporation."

The law that the officers or agents of a corporation who commit or participate in an illegal act are criminally liable for such act is also clearly stated in 5 Thompson on Corporations, section 5648. Such, in the very nature of things, must be the law, for, if it were not, an insolvent corporation could, through its agents, always violate the law with impunity, since, as we have seen, it cannot be imprisoned. The contention, therefore, that the ordinance is discriminatory because a corporation is permitted to do what an individual may not, is not true in fact. The primary and controlling purpose underlying all ordinances which prohibit and punish the sale or other disposition of intoxicating liquors is to deter those who are inclined to dispose of such liquors from doing so within the corporate jurisdiction.

But, viewing this case entirely apart from the law that the agents of corporations are personally liable for acts that are violative of a law or ordinance like the one in question, we think that no one will contend that, under the provisions of the ordinance in question, it is possible for any

officer or agent of a corporation to escape punishment, if con-
victed of any act which is prohibited  thereby, if an indi-
vidual doing the act would be subject to punishment.   In
view of this, it is not true, therefore, that a corporation may
sell or dispose of liquors within the territorial jurisdiction
of the city court of American Fork City with impunity.   Is
not the fact that the agents of a corporation are personally
liable and subject to punishment by both fine and imprison-
ment for any violation of the ordinance a far better deter-
rent than the mere imposition of a fine against the corporate
entity, would be?   But the corporation, as such, may also be
punished under the state law, and no doubt the only reason
why it was not made punishable under the ordinance in
question was because it was assumed by the framers. thereof
that, since the penalty that under the statute is required
to be imposed upon corporations exceeds the jurisdiction of
the municipal courts, a penalty within that jurisdiction may
not be imposed by ordinance.   Whether this assumption be
correct or not is not controlling here, since neither the pur-
pose nor effect of the ordinance, as we have seen, is discrim-
inatory for the reason that every violation of the ordinance,
whether such violation is by a natural person or by a cor-
poration, is punishable by fine or imprisonment, or by both.
It is therefore not true, as contended by appellant, that,
while he is subject to punishment for certain acts, similar
acts, when committed by a corporation, are not punishable.
If all acts that are prohibited by the ordinance in question
are punishable in the same manner and to the same extent,
how can it be said that it is discriminatory in its effect?
Does the fact that a corporation under the ordinance can be
reached only through its agents, and that it may be fined in
a larger sum than an individual in a court other than  a
municipal court invalidate the ordinance?   In view of
these conditions the corporation might perhaps deem itself
discriminated against, but certainly the individual is not.
Under such circumstances, the mere fact that the penalty
clause of the ordinance is limited to natural persons in order
to make it conform to the statute cannot be given the effect

contended for by appellant. If such effect were given it, the letter, although without force, rather than the clearly expressed purpose and intention of the lawmaker and the natural effect of the law, would prevail. It might with as much force be contended that a law or ordinance is discriminatory because under it a natural person may be imprisoned while a corporation may not. Again, it could be contended that, because a corporation is fined in an amount larger than a natural person for the same act, therefore the law or ordinance is discriminatory. In looking at the mere letter of such a law or ordinance, such would no doubt appear to be so; but when the reason and purpose of the whole subject-matter covered by a statute or ordinance and its actual effect are kept in mind there is no discrimination, either in fact or in law. Such is the case here.

In connection with this assignment, counsel also raised some question with respect to the alleged fact that the word "natural" is contained in the ordinance published and proved, while that word is omitted from the ordinance as recorded. The ordinance as published and proved is the only one before us, and the word "natural" is contained therein. Whether that word was inadvertently omitted from the record, as contended by counsel for the respondent city, or not, is, in view of the conclusions we have reached clearly immaterial, since that word is really without effect. If the word were entirely omitted from the ordinance the effect we have given it would still be the same. We have carefully examined the cases cited by appellant other than those we have already referred to, but we have found none that in any way touches the real questions involved here. Upon both reason and principle we are clearly of the opinion that the appellant's contention with respect to this assignment should not prevail.

The final reason stated by counsel why the ordinance is invalid is as follows: "It is beyond the power of a city to fix a minimum fine." Upon this point counsel have cited some cases from New Jersey. Those cases are

all based upon special statutes and can be given no
effect here, for the simple reason that a mere cursory exam-
ination of them will convince any one that if the New Jer-
sey court had been governed by our statute instead of the
one in force in New Jersey it could not and would not have
arrived at the conclusions arrived at in those cases. We
can see no reason whatever why the cities of this state may
not, under the power conferred upon them by the statute,
fix a minimum fine for the violation of ordinances, so long
as the fine imposed is within the limits fixed by the charter
or some special statute, and it is neither unreasonable nor ex-
cessive when considered in connection with the act sought
to be punished. The books abound with cases wherein
it·is held that much larger penalties and much longer terms
of imprisonment as ·punishment for the illegal and pro-
hibited sales of intoxicating liquors are neither unreason-
able nor excessive. If the minimum fine imposed by the
ordinance in question is neither unreasonable nor excessive,
the question is one of policy or expediency, rather than one
of power, and is therefore legislative and not judicial.

Since writing the foregoing opinion appellant has called
our attention to the case of *People v. Edwards* (Mich.) 140
N. W. 473-475, in which it was held that under the local
option statute of Michigan the courts cannot take judicial
notice of whether elections have been held
under the statute, nor of what the result of       **8**
such an election, if one was held, was. Whether
such should be held to be the law of this state
need not now be decided. We do take judicial notice
that an election was held under the mandatory provisions of
the law in June, 1911. What the result of that election was
is immaterial here, since the validity of the ordinance in
question would not necessarily depend upon what the result
of the election was. Under our statute a person could be guilty
of an illegal sale of intoxicating liquors, if sold as charged
regardless of whether the people of American Fork City
voted wet or dry. This being so it is quite immaterial to
determine the result of the election in this case. We can

do no more under the constitutional provisions of this state than to inquire into the validity of the ordinance. Any matter, therefore, that does not affect its validity is beyond our jurisdiction.

The judgment is affirmed; respondent to recover costs for printing brief in this court.

McCARTY, C. J., concurs.

STRAUP, J. (concurring).

In March, 1911, the legislature of this state adopted what is known as a local option system, which, among other things, provided that each city, town, and county unit as defined in the act "shall constitute a separate and independent local option unit for the determination for itself whether the sale of intoxicating liquors shall be permitted or prohibited within such town, city, or county unit;" county unit being all that part of any county outside of cities and towns. It further provided for an election to be held in June, 1911, which was mandatory, to determine whether the sale of intoxicating liquors should be permitted or prohibited within such units. Some inquiries were made in the court below as to whether an election was had in American Fork City, and as to whether the electors thereof voted against sale. But no point is here made of that. The validity of the ordinance, or the power of the municipality to pass it, is not here assailed or questioned on any such ground. I shall therefore assume that an election in American Fork City was held in June, 1911, and that at such election a majority of the electors, voting upon the question of whether the sale of intoxicating liquors should be prohibited or permitted, voted against sale.

In May, 1912, the ordinance in question was passed prohibiting the sale, etc., of intoxicating liquors within the corporate limits of that city. The ordinance is in 11 sections. Sections 1 and 10 are the particular parts drawn in question. Section 1 is as set forth in the opinion of Mr. Justice Frick. A controversy exists as to the provisions of section 10. The statute provides (Laws 1911, ch. 125, section 205) that "all

ordinances, before taking effect, shall be deposited in the office of the city recorder and published at least once in some newspaper publised within the city. . . . The city recorder shall record all ordinances in a book kept for that purpose, together with the affidavits of publication by the publisher or his agent; . . . and said book, or a certified copy of the ordinances, under the seal of the city, shall be received as evidence in all courts and places without further proof, or if printed in book or pamphlet form by authority of the . . . city council they shall be so received." The ordinance was deposited in the office of the city recorder, and was published in a newspaper and, together with the affidavit of publication by the publisher, was recorded by the recorder in a book kept for that purpose. Section 10 of the ordinance as recorded in the book is, "Any person who shall violate the provisions of this ordinance shall be deemed guilty of a misdeameanor," etc. Section 10 of the ordinance as published in the newspaper is, "Any natural person who shall," etc. The "book" in which the ordinance was so recorded and a certified copy of the ordinance as so recorded were put in evidence. That, under the statute, was good proof of the ordinance. The affidavit of the publisher and the ordinance as published in the newspaper were also shown. So it is made to appear that the ordinance as recorded in the book and as certified to by the recorder is, "Any person who shall," etc., while the ordinance as published in the newspaper is, "Any natural person," etc. From this it is argued that the ordinance as passed was not published in a newspaper as provided by law; but that another and different ordinance was published, and that the record offered to prove the ordinance was uncertain as to the terms of section 10. There is of course some discrepancy between the ordinance as recorded in the book and as published in the newspaper. But I do not think that renders the ordinance bad, or shows it was not published in accordance with the statute. I think the ordinance should be regarded, not as providing that "Any natural person who shall," etc., but "Any person who shall," etc., and as it was

recorded in the book kept for that purpose and certified to by the city recorder and put in evidence. That, says the statute, shall be evidence of the ordinance "without further proof."

Now, as to the question of the power of the city to pass that kind of an ordinance. The statute (Laws 1911, ch. 120, section 206x41), under the title of "Powers of City Councils," expressly provides that city councils shall have the power "to license and regulate, or prohibit, the sale," etc., of intoxicating liquors, provided that "no license for such purpose shall be issued by the city council where the qualified electors of such city have voted 'against sale' of intoxicating liquors, and where the qualified electors have voted 'against sale' of intoxicating liquors, the city council of such city shall prohibit" the sale of intoxicating liquors. Then section 206x87 further expressly provides that city councils shall have the power "to pass all ordinances and rules, and make all regulations, not repugnant to law, necessary for carrying into effect or for discharging all powers and duties conferred by this act, . . . and to enforce obedience to such ordinances with such fines or penalties as the city council may deem proper; provided, that the punishment of any offense shall be by a fine in any sum less than $300, or by imprisonment not to exceed six months, or by both such fine and imprisonment." Here, then, where the qualified electors of a city have voted "against sale," is given express power to the city council of such city to prohibit the sale of intoxicating liquors, and to prescribe and fix fines and penalties. That is clear. It, however, is said that the language of section 206x87, "provided that the punishment of any offense shall be by fine in any sum less than $300," did not authorize the municipality to prescribe a fine as provided in the ordinance, "not less than fifty dollars nor more than $299." That has already been sufficiently answered. It would seem self-evident that a fine not less than fifty dollars nor more than $299 is a "sum less than $300." I therefore think the ordinance not bad for that reason.

But the chief argument is that, where the electors of a city or town have voted "against sale" of intoxicating liquors, the legislature itself prohibited the sale of such liquors in such city or town, and prescribed and fixed fines and penalties, and hence it was not competent for the municipality to also legislate upon the subject; but if it be held it has such power, it nevertheless is required to fix the same fine and penalty fixed by the legislature, and to include all classes enumerated in the statute; and that this cannot be done, because, in certain particulars, the fine prescribed by the statute is in excess of that authorized to be prescribed by a municipality. The local option act (Laws 1911, ch. 106), relating to the sale and manufacture of intoxicating liquors, does forbid the sale, etc., of such liquors in cities and towns where the electors thereof voted against sale; and by section 65 it is provided: "Any natural person who shall, in any way, violate any of the provisions of this act shall be guilty of a misdemeanor, and shall be punished, when not otherwise provided in this act, by a fine of not less than fifty dollars nor more than two hundred ninety-nine dollars, or by imprisonment in the county jail for not less than thirty days, or more than six months, or by both such fine and imprisonment. If any natural person shall be convicted a second time for violating any of the provisions of this act, such person shall be punished for such second and each subsequent violation by both such fine and imprisonment. If any corporation shall, in any way, violate any of the provisions of this act it shall be *guilty of a misdemeanor* and shall be punished, when not otherwise provided in this act, by a fine of not less than one hundred dollars nor more than one thousand dollars; and if any corporation shall be convicted a second time for violating any of the provisions of this act, it shall be punished for such second and each subsequent violation of the law by a fine of not less than three hundred dollars nor more than five thousand dollars."

The prohibition, regulation, or restriction of the sale of intoxicating liquors relates peculiarly to the police powers of the state. That the legislature may confer police power

upon municipalities over subjects within the provisions of existing state laws is now pretty generally recognized. This court is committed to that doctrine. Where, as here, such power is conferred, the municipality may prohibit and punish acts which are also prohibited and punished as misdemeanors under a general statute of the state, and each may provide a separate and different punishment. In such case the municipality may prescribe and fix a fine and penalty for the violation of its ordinance, the same as or different from that prescribed and fixed by the statute for the violation of a statute regarding the same subject-matter, providing the fine or penalty prescribed by the municipality is within the power conferred upon it to prescribe and fix fines and penalties. Within that limitation the fine or penalty prescribed by a municipality for the violation of its ordinance may be greater or less than that prescribed by the statute for a violation of a statute regarding the same subject-matter. Whether, therefore the penalty prescribed by the municipality is authorized is not dependent upon the question of whether the penalty so prescribed by it is the same as that prescribed by the statute for the violation of a statute regarding the same subject-matter, but whether it is within the power conferred upon it to prescribe fines and fix penalties. So, whether the penalty prescribed by the ordinance forbidding the sale of intoxicating liquors is the same as or different from that prescribed by the statute also forbidding such sale is not controlling. The pertinent question is, Is the penalty fixed by the ordinance within the power conferred upon the municipality by section 206x87 heretofore referred to? I think it is.

Now, does the ordinance apply to all classes, to everybody? I think it does. Section 1 is, "It shall be unlawful for any person" to sell, etc., intoxicating liquors. That includes natural persons and "bodies politic and corporate, partnerships, associations, and companies." (Comp. Laws 1907, sec. 2498.) But is is said that section 10 of the ordinance before us refers only to "Any natural person who shall violate," etc., and is as it is set forth in the opinion of my associ-

ates. I do not so regard the ordinance. As already observed, section 10 of the ordinance, as recorded in the book kept for that purpose, and as certified to by the city recorder, and as put in evidence, is "Any person who shall violate," etc., shall be punishable, etc. That includes a corporation as well as a natural person. Of course, it can not be imprisoned, but a fine can be imposed upon it for a violation of the ordinance, in any sum not less than fifty dollars nor more than $299, Now, that is not as large fine as prescribed by the statute for a violation by a corporation of the statute regarding the same subject-matter. But what of that, since it is a fine which the municipality is authorized by law to fix and prescribe as heretofore shown? There is no middle ground to take in this. We are either obliged to accept the rule adopted in California, Georgia, and Texas that a municipality is not authorized to prohibit and punish by ordinance the same act which is prohibited and punishable under a general statute, or to accept the contrary doctrine to which this court is already committed, and which, as shown by Mr. Justice Frick, is supported by the great weight of authority.

We cannot take half of one and half of the other, and say that a municipality may by ordinance prohibit an act, but it must fix the same penalty prescribed by the statute for a violation of a statute regarding the same subject-matter; and since the fine prescribed by the statute is in excess of that which a municipality may prescribe, therefore, it cannot legislate at all. Since the municipality may legislate upon the subject, it may also prescribe its own penalty within limitations conferred upon it to fix and prescribe fines and penalties. Of course it cannot pass ordinances in conflict with the general law, or without the power conferred upon it. But fixing its own penalty within the power conferred upon it to fix and prescribe penalties is not repugnant to law, though the penalty so fixed by it is greater or less than that prescribed by the statute for a violation of a statute regarding the same subject-matter. So under the ordinance as recorded, and as proven by the "book" in which it is re-

corded, and as certified to by the city recorder—good and sufficient evidence, says the statute, of its existence and terms—I think a corporation, as well as a natural person, can be prosecuted for its violation, and hence the ordinance is not open to the charge that it is discriminative.

I therefore concur in the judgment of affirmance, but not in the allowance of costs, since the action is criminal, not civil.

### ON APPLICATION FOR REHEARING.

FRICK, J.

Counsel for appellant have filed a petition for a rehearing. The only reason assigned why the petition should be granted is that the statement contained in the last paragraph of the majority opinion, namely, that "the validity of the ordinance in question would not necessarily depend upon what the result of the election was," is erroneous. Counsel criticise that statement, and they insist that, unless the city authorities had the power to pass the ordinance in question, the same would be void and of no effect.

For the purposes of this decision we shall concede that counsel are correct, and that the statement aforesaid may be, and perhaps is, too sweeping. We, however, did not deem what is contained in the statement as controlling, and do not do so now. So as to avoid all misunderstanding we now withdraw the statement from the opinion, and shall consider it of no force or effect.

In doing so, the result reached in the opinion aforesaid must still be the same. As we pointed out in that opinion, the election to determine whether the respondent city should be wet or dry was to be held under a mandatory statute and at a time therein fixed. We are bound to presume that the election was held at the time and for the purpose specified in the statute. We must further presume that the ordinance in question was passed regularly and pursuant to law or the power vested in the city authorities of American Fork City. These presump-

tions must prevail until the contrary is made to appear. It was alleged in and proved under the complaint filed against appellant that he had violated the provisions of said ordinance, and he was accordingly adjudged guilty. Although lack of power to pass the ordinance is not made apparent upon the face thereof, and although there is not in the record before us a scintilla of proof or evidence tending to show that the ordinance is invalid because the authorities of American Fork City had no power to adopt it, yet appellant insists now that the ordinance is invalid for the reason that American Fork City lacked the power to adopt it.

It is a familiar rule of law that, where cities are given general power to pass an ordinance upon a given subject, the presumption prevails that ordinances passed upon that subject are valid until the contrary is made to appear and that the burden of showing their invalidity is upon the person assailing them. After alluding to this presumption the author of McQuillin's Mun. Ords. sec. 384 says:

"Therefore, the general rule is that, when the validity of an ordinance is called in question, the burden is upon the party who denies the validity to demonstrate it by proper proof, as where the question of the lack of power to enact is raised."

That is the precise question that is raised here.

The doctrine stated above is illustrated in the case of *Haywood v. New York C. & H. R. R. Co.,* 59 Hun, 617, 13 N. Y. Supp. 177, where it is held that, where an ordinance could be passed and enforced only in cities of over 50,000 inhabitants, the ordinance would be held valid, and would be enforced in the absence of evidence that the city passing the same did not have as many as 50,000 inhabitants. The power to enact the ordinance was, therefore, presumed to exist, and such is the general rule. Nor can we see any good reason why the rule is not a reasonable and proper one.

In *Harmon v. City of Chicago,* 140 Ill. 374, 29 N. E. 732, the rule in the headnote is stated thus:

"As the burden of showing the invalidity of a statute or an ordinance is upon him who asserts it, the intendments will all be against him, and, in the absence of evidence on the subject, the facts necessary to establish their validity will be presumed to exist."

The law is also stated to be such in 1 Smith on the Modern Law of Municipal Corporations, section 501.

In our judgment it would not only be a very strange, but an impracticable and oppressive rule which would require the municipalities of this state to prove that they had the power to pass the ordinance, and that the power had been regularly exercised every time they undertook to enforce such ordinances in their own courts. Where the municipalities are given general powers to pass ordinances on given subjects, the presumption prevails that they did not transcend their powers, and that they exercised them legally and regularly in passing the ordinances, until the contrary is made to appear.

This action was commenced in the local court of American Fork City, and if the appellant desired to assail the power of the city to pass the ordinance he should have done so in that court, or at least should have assailed it in the district court, where the case on appeal was tried de novo. That question cannot be raised for the first time in this court, unless, perhaps, where it appears on the face of the ordinance that the city exceeded its powers in passing it. It has, however, been held that, in case an ordinance cannot become effective until it is ratified or approved by the voters of the city passing it at an election to be held for that purpose, then before the ordinance can be enforced it must be proved that it has been ratified or approved as required by law. (See *Schott v. People,* 89 Ill. 199.) It requires but slight reflection to make clear that such a rule in no way affects the general rule we have referred to, nor in any way is contrary to the general rule laid down by the same court in *Harmon v. City of Chicago, supra.* We are also aware that there are some cases to the effect that, in enforcing ordinances which are passed pursuant to elections held under local

option laws, it must be shown that the election was duly held, and what the result thereof was. These cases, however, cannot control. The question as it arises here is one of presumption of regularity and power. The burden to overcome that presumption is upon the defendant, and, since he has offered no evidence of any kind or character to overcome it, it prevails against him, and we are bound to hold that, upon the ground now urged, the ordinance cannot be assailed here. The question, therefore, is not one of taking judicial notice of what the result of the local election was, but it is one of presumption by which we are bound to presume until the contrary is shown that the city authorities of American Fork City acted regularly and within their legal powers in adopting the ordinance in question. It is clear, therefore, that our statement in the last paragraph of the original opinion is not important, and in no way affects or can affect the result.

The petition for a rehearing should be, and it accordingly is, denied.

McCARTY, C. J., and STRAUP, J., concur.